DECISION
Plaintiff appeals the 2009-10 real market value of property identified as Account R165436 and the tax year 2003-04 maximum assessed value. A trial was held in the Oregon Tax Courtroom, Salem, Oregon on September 13, 2010. Plaintiff appeared on his own behalf. Scarlet Weigel, Residential Appraisal Supervisor, appeared on behalf of Defendant. Scott Carver (Carver), Residential Appraiser, testified on behalf of Defendant.
Plaintiff's Exhibits, Attachments 1 through 7, and Exhibit A, and Defendant's Exhibits A and B were admitted without objection.
Defendant's Motion to Amend Pleading, its Answer, to conform the requested real market value to its Appraisal Report was granted.
 I. STATEMENT OF FACTS
Plaintiff testified that he purchased the subject property in January 2003, paying $672,000. Defendant describes the subject property as follows:
 "The home is a 2001 custom built traditional style of good quality and average condition with 4835 square feet of finished living area on 3 levels. The home is sited on a corner, rectangular shaped lot of 11,392 square feet that slopes to the West. The home is assumed to be in marketable condition with functional inadequacies only related to the EIFS siding. Physical depreciation is assumed to be reflected by actual age."[1] *Page 2 
(Def's Ex A-2.) Plaintiff testified that the "county's estimate of value was $932,000" in tax year 2003-04. Plaintiff testified that in November 2004 when seeking to refinance the mortgage loan on the subject property "an independent appraiser" estimated real market value to be $750,000. (Ptf's Ltr at 1, Aug 28, 2010.)
For tax year 2009-10, Plaintiff testified that, using Defendant's appraisal report and two sales of neighboring properties, he concluded that the subject property's real market value is $611,000. (Ptf's Ltr at 2, Sept 11, 2010.) Defendant asked Plaintiff if he confirmed the sale prices and dates of sale and inspected the properties. Plaintiff testified that he confirmed comparable sale #1; he talked to the owner who is a friend. He testified that other information about the properties he selected as comparable came from Portland Maps, "an official website," and he did not verify that each sale was a market transaction. Plaintiff wrote that he did not "know" whether the comparable properties have a full or partial basement or the number of bedrooms. (Ptf's Attach 4.) Carver testified that Plaintiff's comparable sale #2[2] was a "distressed sale," because the owners "were on the brink of foreclosure" and the property was listed in February 2009 for over a $1 million and finally sold in December 2009 for $566,000.
Plaintiff did not submit an appraisal report prepared by a certified tax appraiser for the 2009-10 tax year. Plaintiff testified that he is not a certified appraiser and has no "experience in real estate;" he testified that he used "common sense" to determine the subject property's real market value in addition to applying Carver's adjustments to the two comparable properties he selected and one of Carver's comparable properties. (Ptf's Ex A-5.) Plaintiff's adjusted sale prices ranged from $462,124 to $742,419. (Id.) Plaintiff adjusted Carver's adjusted sale price for comparable #3 (1939 NW Jasmine Lane) for gross living space and EIFS for an adjusted sale *Page 3 
price of $742,419. (Id.) In response to Defendant's question asking if he could explain how the adjustments were determined, Plaintiff responded that he "used Carver's report." Plaintiff did not state if the gross living space for Defendant's comparable #3 was measured from the interior or exterior and he made no time adjustment for date of sale. Plaintiff submitted three additional properties; he used the "following criteria to pick houses to compare:"
 "1. close to my house with walking distance;
 "2. good location;
 "3. corner lot;
 "4. sale date is close to January, 2009."
(Ptf's Attach between A-9 and A-10.) Plaintiff's adjusted sale prices ranged from $559,055 to $643,225. (Id.) Plaintiff made no time adjustment for date of sale and none of the three comparable properties has EIFS. (Id.) Plaintiff did not state whether he verified the transactions or inspected the properties.
Plaintiff testified that his comparable properties are similar to the subject property because each is "100 percent EIFS [exterior insulation finished siding]" whereas Carver's comparable sales have cedar and stone siding or partial EIFS siding. In response to Plaintiff's question why Carver did not select properties with 100 percent EIFS, Carver responded that he used three paired sales to determine the "negative stigma" of EIFS on the market value. (Def's Ex B at 1.) Carver testified that based on the three paired sales during 2008 for two properties with 100 percent EIFS those properties sold for $13.94 to $17.80 per square foot less than comparable properties with cedar siding. (Id.) Plaintiff testified that in July 2010, he obtained two "repair/replacement bids" for the EIFS, ranging in price from approximately $110,000 to $160,000. (Ptf's Attach 6, 7.) *Page 4 
Carver, an Oregon registered appraiser, testified that he reviewed a number of property sales before identifying three properties as comparable to the subject property. He testified that each sale was adjusted for time, location, view, class, gross living area, and EIFS. (Def's Ex A-3.) Carver testified that he gave the most weight to comparable sale #2 (1939 NW Jasmine Lane) with an adjusted sale price of $824,000 "based upon similar siding, site, age, view, location and quality class." (Id.; Def's Ex A-4.) Plaintiff questioned why Carver gave that sale the most weight when the siding on that property is "15% EIFS." Carver responded that his paired sales analysis measured the "EIFS stigma perceived by the market," and the amount of EIFS on the structure is not relevant so long as a portion of the structure is EIFS.
Plaintiff concluded his testimony by alleging that the Multnomah County Board of Property Tax Appeals "told" him in 2004 "that the appeal deadline for the assessed value for this house [had] passed, [he] "believed them and did not pursue further since I really do not know the importance of AV at that time." (Ptf's Ltr at 2, Aug 28, 2010.) Plaintiff stated that "[b]ased on Oregon law ORS 305.288 (see Attachment #3), I have the right to appeal this house's AV." (Id.)
 II. ANALYSIS
At issue in this case is the subject property's real market value for tax year 2009-10. Real market value is defined in ORS 308.205(1)[3]
which reads: "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." There are three methods used to determine real market value: (1) the cost approach, (2) the sales-comparison or comparable sales approach, and (3) the income approach. Allen v. Dept. of Rev., 17 OTR 248,252 (2003). See also OAR 150-308.205-(A)(2) (stating that all three approaches to valuation of real property *Page 5 
must be considered, although all three may not be applicable to the valuation of the subject property). Defendant concluded that the income and cost approaches were not applicable to the subject property. (Def's Ex A-3.)
A. Comparable Sales Approach
Plaintiff did not present a comparable sales approach to the court. First, Plaintiff presented two properties he identified as comparable without making any adjustments for date of sale (time), size, view and location. (Ptf's Attach 4.) One of the two properties he identified as a comparable, comparable sale #2, was not an arm's length sale transaction. Second, Plaintiff selected six properties he identified as comparable to the subject property; two properties were the same comparables he previously presented, one property was selected by Carver and the other three met four criteria, the most important being that each property was within walking distance of the subject property. Plaintiff wrote that he "exactly follow Mr. Carver's methodology." (Ptf's Ex A, between A-9 and A-10.) Unfortunately, Plaintiff is not a certified appraiser nor trained real estate expert. He has no experience in making valuation determinations and merely copied Mr. Carver's approach without making an educated and reasoned decision whether each adjustment, e.g., proposed adjustments for size and EIFS, was appropriate. Plaintiff's proposed adjustment for size assumed without supporting evidence that each of the comparable properties' gross living space was measured from the interior like Plaintiff measured the subject property, rather than the exterior as stated by Carver. Plaintiff adjusted each sale price using Carver's computed EIFS adjustment amount per square foot based on the percentage of EIFS to cedar siding for his comparable properties. Plaintiff did not understand that Carver's EIFS adjustment measured the difference in total sale price between a property with EIFS and a property without EIFS. Carver's EIFS adjustment was not based on the quantity of EIFS to cedar siding on a structure but, rather, how much the market reduces the *Page 6 
total sale price of a property with EIFS, without regard to the quantity of EIFS on the structure. Plaintiff's alternate approach was to reduce the subject property's real market value for the cost to cure the EIFS. Unfortunately, Plaintiff's repair/replacement bids were more than 18 months after the assessment date and did not clearly state whether the bids were to cure the problem or replace the siding. Plaintiff's approach is not an accepted method of valuation.
B. Burden of Proof
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427 (emphasis added). Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept.of Rev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. ofRevenue, 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." Poddar v. Dept. of Rev.,18 OTR 324, 332 (2005) (quoting Woods v. Dept. of Rev., 16 OTR 56, 59
(2002) (citation omitted.)
Plaintiff presented no evidence of the real market value of his property as of the assessment date, January 1, 2009. Plaintiff's appraisal report prepared for his refinancing was prepared as of November 2004, a date in advance of the assessment date for the tax year before the court. Plaintiff did not submit an appraisal report prepared as of the date of assessment. Plaintiff's approach to determine real market value was to "follow Mr. Carver's methodology." Even though Plaintiff is familiar with his property, he did not qualify himself as an expert on valuation. "When a plaintiff fails to establish any independent expertise and relies only on his own costs and his unsupported, personal opinions, a court weights plaintiff's words in the light of his self-interest."Erickson v. Commission, 1 OTR 626, 629 (1964). Plaintiff's testimony was *Page 7 
"vague and indefinite" and much of his testimony was an attack on Defendant's appraisal method and determinations. Id. Unfortunately, "[s]uch negative testimony does not establish an affirmative case" as required by statute. Id. Plaintiff failed to offer proof as to the real market value of his property. Because Plaintiff failed to carry his burden of proof, the burden did not shift to Defendant. ORS 305.427. Defendant's determination of the subject property's market value is not considered.
C. ORS 305.288
The Oregon legislature has enacted laws that guide taxpayers challenging the real market value assigned to their properties. The first step in the appeal process is to file a petition with the county board of property tax appeals (BOPTA). To challenge the 2003-04 property values, Plaintiff should have filed a petition with the Multnomah County BOPTA by December 31, 2003. Plaintiff did not file a petition with the BOPTA.
ORS 305.288(3) provides:
 "The tax court may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if, for the year to which the change or correction is applicable the assessor taxpayer has no statutory right of appeal remaining and the tax court determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal."[2]
Tax year 2003-04 is not the current tax year and that tax year is more than two tax years immediately preceding the current tax year. There is no statutory authority allowing the court to review the tax year 2003-04. *Page 8 
 III. CONCLUSION
After careful review of the evidence and testimony, the court concludes that Plaintiff failed to carry his burden of proof for tax year 2009-10 and there is no statutory authority for the court to review tax year 2003-04. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied
Dated this _____ day of January 2011.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onJanuary 11, 2011. The Court filed and entered this document on January11, 2011.
[1] Plaintiff disputes the total gross living square footage; he states that interior measurements total 4,589 square feet. Carver testified that he measured the exterior in determining the total gross living space.
[2] Plaintiff's comparable sale #2 is located at 3234 NW Chapin Drive. (Ptf's Attach 4.) Plaintiff referenced comparable sale #2 as comparable sale #1 on Exhibit A-5.
[3] All references to the Oregon Revised Statues (ORS) are to 2007.
[2] All references to the Oregon Revised Statutes (ORS) are to year 2007. *Page 1